IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

| | | |
|---|---|---|
| ANTHONY P CASSIDY | * | |
| PLAINTIFF | * | CIVIL ACTION<br>FILE NO. 4:14-cv-116 (CDL) |
| v. | * | |
| TIYA SUPPORT SERVICES, LLC. | * | Jury Trial Demanded |
| DEFENDANT | * | |

INTRODUCTION

COMES NOW Plaintiff in the above styled matter and files this Complaint for damages, and in support of this Complaint shows the Court as follows, to wit:

SUMMARY OF ACTION

1.

This is an action for damages against Defendant arising under the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. §§ 201, et seq., ("FLSA") and the Anti-Retaliation provision of the False Claims Act, 31 U.S.C. § 3730(h).

JURISDICTION

2.

This Court has jurisdiction of this matter pursuant to 28 U.S.C. § 1331 in

that it involves a Federal question arising under the laws of the United States.

PARTIES

3.

The Plaintiff in this case, ANTHONY P. CASSIDY is a Caucasian male citizen of the United States and the State of Alabama.

4.

Defendant in this case, TIYA SUPPORT SERVICES, LLC, is a FOREIGN corporation organized under the laws of the State of Louisiana but not authorized to do business in the State of Georgia; however, lack of authorization notwithstanding, it is doing business in the State of Georgia at its office located at BUILDING 470, 10TH DIVISION ROAD, FORT BENNING, GA 31905. Defendant has its principal place of business located at 112 FOUNDERS DRIVE, STE. 201, BATON ROUGE, LA 70810.  Defendant may be served with process at the office of its registered agent for service of process: TIYA SUPPORT SERVICES, LLC, C/O MANVILLE BORNE, REGISTERED AGENT, 112 FOUNDERS DRIVE, SUITE 201, BATON ROUGE, LA 70810.

## VENUE

5.

Venue in this case is proper under 28 U.S.C. § 1391(b) in that Defendant resides in this judicial district and/or a substantial part of the events or omissions giving rise to this claim occurred in this judicial district.

## FACTS

6.

Plaintiff was employed by Defendant on June 18, 2008, following a period of temporary employment status which ended on August 8, 2008, he was given full employee status; he was terminated June 14, 2013.

7.

Plaintiff's primary task was to maintain and repair commercial and industrial kitchen equipment at a facility at Fort Benning, Georgia pursuant to contract with Defendant and, inter alia, tasks related to continuous equipment operation.

8.

Plaintiff was required to arrive at work at 8 AM on the days he was scheduled to work, but he arrived at, or before, 8 AM virtually the entire time he

was employed by Defendant.

9.

Despite the requirement to be on the job and ready to work at or by 8 AM, Plaintiff was unable to clock in because his supervisor had sole control of the data entry device required for uploading information and tracking time, and on many occasions, approximately eighty percent (80%) of the time, the device was not provided to Plaintiff, or others similarly situated for that matter, to clock in until 9 AM.

10.

Plaintiff's shift was scheduled to end at 4:30 PM on those days he was scheduled to work, but he was required to be clocked out thirty (30) minutes before that time even though he was still present for, and engaged in, Defendant's business until the 4:30 PM end of shift time.

11.

On a number of occasions, Plaintiff's supervisor was uploading materials to the data devices of Defendant's employees, and on those occasions Plaintiff and others similarly situated had to be logged off (clocked out) about 1 hour before 4:30 PM, even though Plaintiff and others similarly situated would be required to

be present for, and engaged in, Defendant's business until the 4:30 PM end of shift time.

12.

For payroll time keeping purposes, the clock would commence running when Plaintiff was able to obtain his data device and log in; then, the clock measuring Plaintiff's compensable hours would stop when he was logged out of the data device.

13.

Defendant's management, Plaintiff's supervisors, would also alter the time logs of Plaintiff and similarly situated employees, as they saw fit: Plaintiff, and others similarly situated would then be paid according to the modified hours showing on the system. The modifications never inured to the benefit of Plaintiff or other employees whose time logs were so modified.

14.

Plaintiff also worked overtime for which he was not compensated. Specifically in the last year of his employment Plaintiff worked at least thirty (30) minutes overtime on approximately twenty (20) occasions, for which he was not paid, Plaintiff did not complain fearing disciplinary action for such complaint.

The impetus for such overtime came from required service calls, for which Defendant dispatched him.

15.

Plaintiff's pay rate was twenty-one ($21.00+) dollars per hour, and in addition, he received a fringe benefit of five ($5.00+) dollars per hour which was calculated hourly and paid weekly.

16.

Defendant employed written devices to record times during the first two years of Plaintiff's employment, and switched to the data devices for about six months. Defendant then used both the hand held devices and a time card clock for about 3-4 months.  Following difficulty with maintaining accurate records with two methods of tracking people clocking in and out; at that time they defaulted to using only the data devices, but these devices were so inaccurate that employee's complete time data sheet, often had to be manually entered into the system the next work day, and often after more than one day.

17.

Additionally, the data devices that maintained time records always required downloading, and no employee could be logged into the device or system when the

downloading occurred. Therefore, Plaintiff and others similarly situated were most commonly logging into them about thirty (30) minutes after arriving at work in the morning, and then they were required to sign off them thirty (30) minutes before the time they actually got off work. This one hour per day was not compensated although Plaintiff and others similarly situated were on the job and about Defendant's business during those times.

18.

Plaintiff and others similarly situated were paid for whatever time entries their supervisors capriciously entered into the system; to the best of Plaintiff's knowledge, information and belief, this practice never inured to the benefit of Defendant's employees. For example, if Plaintiff or others similarly situated took no lunch, their time was adjusted to appear as if they had taken lunch.

19.

Many times the lunches deducted should not have been deducted because if Plaintiff or any others got called to a "priority one" service just after going on a lunch break, at those times they would have to interrupt their lunch and travel to the location of the need, as they were required arrive within an hour after receiving the call.

20.

In those instances, if the employee stopped their lunch when they received the call, got their tools together from whatever they were working on before lunch started, unsecured a truck, loaded equipment, entered the data into the device, drove to new location (and if there were no troops or other obstacles in the way), log in their arrival time, get needed tools out, and find someone who knew about the call and where they needed to be, the employee would be pushed to make it in an hour.

21.

In such situations, which were regular and numerous, Plaintiff and other employees were forced, and taught, to log in before they were onsite and then were to fabricate their times; the supervisors would also manipulate the system so that Defendant would appear to be working as specified by contract with no irregularity.

22.

Once the lunch log out was used, even if for only one (1) minute, the program would not allow an employee log out and not permit Plaintiff and others similarly situated to continue the lunch later that day. As a result, the employees

were not getting paid according to the hours worked, and Defendant's clients, the US Army, was paying for work that did not occur or that was not recorded accurately.

23.

Plaintiff complained about both of the above dishonest practices respecting the false claims Defendant was submitting to the military regarding the type and timing of services provided as well as the fact that Defendant's preferred suppliers often charge as much as twice as much as other suppliers would charge and take more time to deliver the said price inflated supplies.

24.

Plaintiff stated, in writing, to his supervisors and others in the company that these practices demonstrated someone was improperly receiving financial benefits as a result of the deceptive and corrupt practices.

25.

After Plaintiff complained about such practices, Plaintiff began to be retaliated against, and his supervisors and other company officials became obvious in their harassment. As examples, and not limitations, Plaintiff would receive things like a memo to report for a meeting at 11 AM when the meeting was

actually at 10 AM, and he would be told fifteen (15) minutes before a meeting to meet a senior client located twenty-five (25) minutes away from Plaintiff's location.

26.

Each failure to perform the otherwise impossible tasks would be met with company discipline, up to and including Plaintiff's ultimate termination on June 14, 2013, for otherwise pretextual purposes.

27.

As baseline, therefore, Plaintiff normally worked one (1) hour daily for which he was not compensated as a result of being unable to log into the electronic time keeping system for thirty (30) minutes in the morning, although he was at work, and having to log out thirty (30) minutes before the end of his shift in the afternoon, Monday through Friday during the final two year period of his employment with Defendant. As a result, Plaintiff would accrue no less than five (5) hours per week of regular time for which he was not compensated.

28.

Plaintiff was a non-exempt hourly worker, yet he was not compensated for the five (5) hours per week of time set out above.

29.

Plaintiff made a total of $26+ per hour for his regular time considering hourly wages and hourly fringe benefits, as set out herein above. Plaintiff worked approximately fifty (50) weeks per year; from a weekly standpoint, then, the amount that Defendant failed to pay Plaintiff each week for regular hours worked but not compensated can be expressed as follows:

$26 per hour x 5 hours per week x 50 work weeks per year = $6,500 per year.

30.

Although Plaintiff hereto has filed this action slightly less than a year after his termination by Defendant, Defendant's actions are intentional such that Plaintiff argues the three (3) year statute of limitations should apply and not the two (2) year statute limitations for non-intentional violations. This would allow Plaintiff to recover for two (2) years of non-payment of regular wages from Defendant as follows:

$6,500 per year in unpaid regular compensation x 2 years = $13,000.

31.

As above, during the final year of Plaintiff's employment with Defendant, he

worked approximately thirty (30) minutes overtime on at least twenty (20) occasions for which he was not compensated. Given Plaintiff's gross compensation of $26/hr, and the requirement that over time be compensated at 1.5 times the regular rate, Defendant has failed to compensate Plaintiff for ten (10) hours of overtime at the rate of $39/hr. This can be expressed as follows:

$39/hr x 10 hours = $390 in unpaid overtime.

32.

As set out above, Plaintiff has accrued $6,500 in unpaid regular time and $390 in unpaid overtime for the last year of his employment with Defendant. This is a total of $6,890 in unpaid wages due Plaintiff as a result of violation of the FLSA; because Defendant's violation was intentional, Plaintiff is entitled to liquidated damages, which doubles the actual damages accrued in the final year of employment:

$6,890 x 2 (liquidated damages modifier) = $13,780 total actual and liquidated damages for the last year Plaintiff was employed by Defendant.

33.

Should the Court determine that a three (3) year statute of limitations is applicable due to the intentional nature of Defendant's conduct, there is another

$6,500 in unpaid regular time for which the statutory liquidated damages modifier should be applied. This is expressed as follows:

$6,500 unpaid regular hours for the year prior to the final year of Plaintiff's employment x 2 (Liq. Dam. Mod.) = $13,500 total actual and liquidated damages for the next to last year Plaintiff was employed by Defendant.

34.

The aggregate exposure Defendant has as a result of Plaintiff's claims for unpaid wages against it can be expressed as follows:

$13,780 (last year unpaid wages) + $13,500 (next to last year unpaid wages) = $27,280 exclusive of attorney fees and costs.

35.

Plaintiff is also entitled to attorney's fees and costs under the FLSA, which are an amount to be determined as litigation progresses.

THEORIES OF RECOVERY

Count 1
The Fair Labor Standards Act of 1938, as amended.
29 U.S.C. §§ 201, et seq. ("FLSA")

36.

Plaintiff incorporates by reference the allegations contained in the above paragraphs as if fully stated herein.

37.

Defendant's actions as set out above constitute an actionable violation of The Fair Labor Standards Act of 1938, as amended, 29 U.S.C. §§ 201, et seq., ("FLSA") for both unpaid wages and retaliation.

38.

As a result of Defendant's actionable conduct, Plaintiff is entitled to damages - general, compensatory, liquidated, and punitive - in an amount to be proven at trial and awarded according to the enlightened conscience of a jury.

39.

Plaintiff is also entitled to an award of litigation expenses and attorney's fees according to relevant law.

Count 2
False Claims Act - Retaliation
31 U.S.C. § 3730(h) ("FCA")

40.

Plaintiff incorporates by reference the allegations contained in the above paragraphs as if fully stated herein.

41.

Defendant's behavior as set out above constitutes actionable conduct under the Anti-Retaliation Provision of the False Claims Act, 31 U.S.C. § 3730(h).

42.

As a result of Defendant's actionable conduct under 31 U.S.C. § 3730(h), Plaintiff is entitled to reinstatement, back pay, liquidated damages, and special damages – in an amount to be proven at trial and awarded according to the enlightened conscience of a jury.

43.

Plaintiff is also entitled to an award of litigation expenses and attorney's fees under the FCA, 31 U.S.C. § 3730(h).

Count 3
Punitive Damages

44.

Plaintiff incorporates by reference the allegations contained in the above

paragraphs as if fully stated herein.

45.

Defendant's actions constitutes willful misconduct, demonstrating wantonness, oppression, and the entire want of care which would raise the presumption or conscious indifference to the consequences that entitle Plaintiff to recover punitive damages pursuant to the punitive damage provisions of the statutory causes of action hereinabove stated.

### Count 4
### Attorney's Fees and Expenses

46.

Plaintiff incorporates by reference the allegations contained in the above paragraphs as if fully stated herein.

47.

Plaintiff is entitled to the costs and expenses associated with bringing and prosecuting this action, to include attorney's fees, pursuant to applicable law as contained within, and applicable to, the statutory causes of action contained herein above.

## PRAYER FOR RELIEF

Wherefore, Plaintiff respectfully prays as follows:

a) that Summons issue and Defendant be served as by law provided;

b) that Plaintiff be awarded judgment in his favor with respect to all contentions in his Complaint;

c) that Plaintiff be awarded actual and liquidated damages as proven at trial;

d) that Plaintiff be awarded compensatory damages for mental and emotional suffering in an amount to be determined by the enlightened conscience of an impartial jury;

e) that Plaintiff be awarded punitive damages in an amount to be determined by a jury at trial to be sufficient to prevent such conduct as alleged herein from occurring in the future and commensurate with the harm done to Plaintiff;

f) that Plaintiff be awarded reasonable attorney's fees and expenses of litigation;

g) that all issues triable by jury be tried by a jury;

h) that all costs of this action be taxed to Defendant; and

i) for such other and further relief as unto this Court may seem just and equitable in the premises.

This 12th day of May 2014.

*/S/John W. Roper*<br>John W. Roper

The Roper Law Firm
5353 Veterans Parkway, Suite D
Columbus, Georgia 31904
(706) 596-5353
johnroper@roperlaw.com
Georgia Bar No:   614159

## VERIFICATION

COMES NOW the undersigned, and states under penalty of perjury, that he does depose and say that the allegations made in the above foregoing pleading are true and correct to the best of the party's knowledge and belief, and said undersigned adopts the said factual allegations and averments for himself, his heirs and his assigns just as if the same had been set out in an affidavit in support thereof. Further affiant sayeth not.

This 12th day of May, 2014.

*[signature]*
ANTHONY CASSIDY